# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TESORO REFINING AND MARKETING COMPANY LLC, | § § § | |
| Plaintiff, | § § | Case No.: SA-13-CV-931-DAE |
| vs. | § § | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | § § § | |
| Defendant. | § § | |

---

### DEFENDANT NATIONAL UNION'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN PORTIONS OF THE TESTIMONY OF DEFENSE EXPERT JAMES C. SPINDLER PURSUANT TO FRE 702

---

OF COUNSEL:

**BEIRNE, MAYNARD & PARSONS, LLP**
John G. George, Jr.
Texas Bar No. 24051944
Email: jgeorgejr@bmpllp.com
112 East Pecan, Suite 2750
San Antonio, TX 78205
Telephone: (210) 582-0220
Facsimile: (210-582-0231

**LOCAL COUNSEL FOR DEFENDANT, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.**

STEPTOE & JOHNSON LLP
Kirsten H. Spira (SBN 119885)
Email: kspira@steptoe.com
Jon T. Neumann (SBN 277331)
Email: jneumann@steptoe.com
Matthew D. Taggart (SBN 227482)
Email: mtaggart@steptoe.com
**STEPTOE & JOHNSON LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone:     (310) 734-3200
Facsimile:     (310) 734-3300
OF COUNSEL:
**BEIRNE, MAYNARD & PARSONS, LLP**
Jeffrey R. Parsons
Texas Bar No. 15547200
Email: jparsons@bmpllp.com
Texas Bar No. 15547200
1300 Post Oak Boulevard, Suite 2400
Houston, Texas 77056-3000
Telephone (713) 623-0887
Facsimile (713) 960-1527

ATTORNEYS FOR DEFENDANT NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, Pa.

As a prefatory matter, for the reasons set forth in National Union Fire Insurance Company of Pittsburg, P.A.'s ("National Union") Motion to Strike Tesoro's Spindler Motion filed November 18, 2014 [Dkt. No. 158], Tesoro's Motion to Exclude Certain Portions of the Testimony of Defense Expert James C. Spindler [Dkt. No. 157] ("Motion") should be stricken from the record because it is undisputed that Tesoro's Motion was filed after the deadline imposed by the Court's November 12, 2013 Scheduling Order, without any reason, explanation, or excuse.  If the Court nonetheless chooses to consider Tesoro's Motion on the merits, it should deny the Motion because Dr. Spindler is preeminently qualified to testify on all the topics set forth in his report, and his testimony is squarely within the scope of proper expert testimony.

## I.       <u>OVERVIEW</u>

National Union disclosed Professor James C. Spindler as an expert in corporate governance, economics, and corporate finance—the very subjects on which Dr. Spindler, a tenured professor at The University of Texas School of Law and Professor at The University of Texas McCombs School of Business, researches, teaches, and publishes.  Despite Dr. Spindler's wealth of knowledge and expertise in these areas, including over 10-years' experience studying, publishing, and teaching corporate governance at some of the nation's top law and business schools, Tesoro suggests Dr. Spindler lacks sufficient expertise in "good corporate governance" because he has not managed a public company in the petroleum industry or worked in a credit department.

Tesoro's attempt to impose a self-serving and myopic view of the requirements necessary for a corporate governance expert is belied by Tesoro's own proffered expert on corporate governance who testified that there are no unique corporate governance rules applicable to the petroleum refining and marketing industry and that all of the standard corporate governance rules apply equally in this industry.  There can be no serious dispute that Dr. Spindler's education,

training, and experience preeminently qualify him to testify regarding good corporate governance standards and whether Tesoro's conduct was in conformity therewith.

Dr. Spindler should also be permitted to testify regarding the economic and financial factors facing Tesoro in 2007 and 2008 and how those factors would have affected a company in Tesoro's position.  By doing so, Dr. Spindler fulfills the classic function of an expert witness under Federal Rule of Evidence 702, *i.e.* to "assist the trier of fact to understand the evidence or to determine a fact in issue."  More specifically, Dr. Spindler uses his education, training, and experience to explain to a lay jury how the situation facing Tesoro, as described by Tesoro's own executives and in its contemporaneous SEC filing—issues pertaining to supply and demand, liquidity, and the consequences of the economic recession—can impact corporate decision-making and credit decisions.  These are not matters of common knowledge or experience and Dr. Spindler should be permitted to explain these concepts to the jury.

II.     **DR. SPINDLER IS PREEMINENTLY QUALIFIED TO TESTIFY ON WHETHER TESORO'S EXTENSION OF CREDIT TO ENMEX WAS CONSISTENT WITH GOOD CORPORATE GOVERNANCE STANDARDS**

A.     **Corporate Governance Is Dr. Spindler's Area Of Study And Expertise**

A witness may qualify as an expert based on his or her knowledge, skill, training, experience or education in the field in question.  Fed. R. Evid. 702.  Dr. Spindler is an economist with an M.A. and Ph.D. in economics from the University of California at Los Angeles, with a concentration in corporate finance and microeconomic theory, and a J.D. from Harvard Law School.  (Neumann Decl., Ex. B [Spindler Dep., Vol. 1], 21:20-22:1, 68:6-69:9, 76:13-16, Ex. D [Spindler Resume].)  Over the ten-year span of his academic career, Dr. Spindler has taught on subjects related to corporate governance and law and economics at the University of Virginia School of Law, the University of Chicago School of Law, the University of Southern California as well as in his current position as Sylvan Lang Professor of Business Associations at The

University of Texas School of Law and Professor at The University of Texas McCombs School of Business.  (*Id.*, Ex. B [Spindler Dep, Vol. 1], 52:25-58:4, Ex. D [Spindler Resume].)  More specifically, the courses he teaches include business associations and securities regulation, wherein he explains corporate governance, corporate law, and public company reporting requirements and other federal regulations on public companies.  (*Id.*)  As Dr. Spindler testified "a large part of what [he] teach[es] … at the law and business schools revolves around what counts as good corporate governance."  (*Id.*, Ex. B [Spindler Dep., Vol. 1], 76:13-16.)  In addition to his academic appointments, Dr. Spindler has also published a number of articles addressing corporate governance issues (*Id.*, Ex. B [Spindler Dep., Vol. 1], 113:7-114:20, Ex. D [Spindler Resume]), and he was a corporate attorney at Cravath, Swaine & Moore LLP in the securities, banking and credit practices advising public companies on compliance with federal securities law and regulations and putting together credit facilities (including working with letters of credit and security agreements), among other things.  (*Id.*, Ex. B [Spindler Dep., Vol. 1], 29:19-31:15, 45:23-46:10.)  In sum, Dr. Spindler's practical and academic background and experience in corporate governance in the fields of law and economics qualifies him to testify on what constitutes good corporate governance.

      **B.**      <u>If Anything, Tesoro's Objections Based On Any  Deficiencies in Dr. Spindler's Experience Go To Weight Not Admissibility of His Testimony</u>

Tesoro's claim that Dr. Spindler should not be able to testify about corporate governance standards, despite his extensive qualifications, simply because he has not managed a public petroleum refining and marketing company or worked in credit department is unduly restrictive and inconsistent with the case law interpreting the requirements of Rule 702.  (Mot., p. 5).  Indeed, Tesoro's myopic view of Dr. Spindler's credentials is precisely the type of unworkable standard that the Fifth Circuit has rejected for being "too strict and unrealistic."  *See So. Cement*

*Co. v. Sproul*, 378 F.2d 48, 49-50 (5th Cir. 1967) (mine superintendent qualified to testify as an expert even though he had never mined limestone or worked in a mine of the same size).  *See also U.S. v. Wen Chyu Liu.*, 716 F.3d 159, 168-169 (5th Cir. 2013) (error to exclude expert testimony of experienced chemical engineer even though lacked experience in working in plant that manufactured the chemical at issue).  As another Circuit has articulated, "Rule 702 is not so wooden as to demand an intimate level of familiarity with every component of a transaction or device as a prerequisite to offering expert testimony."  *Microfin., Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 80-81 (1st Cir. 2004) (former IRS agent qualified to give expert testimony regarding the tracking of funds into and out of lockbox accounts even though he had no previous experience with the operation of such accounts).

There can be no serious question that Dr. Spindler is preeminently qualified to testify regarding corporate governance standards based on his education, training, academic study, and experience.  Dr. Spindler need not have managed a public company or worked in a credit department to offer expert opinions on corporate governance.  Nor is Dr. Spindler required to have worked in the petroleum refining and marketing industry.  Even Tesoro's own "expert in the area of corporate governance" testified there are ***no unique rules of corporate governance applicable to petroleum refining and marketing companies***:

> Q:     Are you aware of any special rules of corporate governance that apply only to petroleum refining and marketing --
> **A:     I'm not.**
> Q:     -- companies?
> A:     (Witness shakes head).
> Q:     I'm sorry.  We talked over the top of each other.  Are --
> **A:     I am not.**
> Q:     Are you aware of any general rules of corporate governance that don't apply to the petroleum refining and marketing industry?
> **A:     I'm not aware of that either.**
> Q:     And do you hold yourself out to be an expert in the area of corporate governance?
> **A:     Yes, I do.**

4

(Neumann Decl., Ex. E [Anderson Dep.], 82:23-83:13.)  Thus, based on Tesoro's own expert's

testimony, Tesoro's objections to Dr. Spindler testifying on corporate governance based on Dr.

Spindler's lack of experience working in a public petroleum refining and marketing company are

baseless.  As the cases cited above show, to the extent that Tesoro believes that deficiencies exist

in Dr. Spindler's experience, such purported deficiencies go to the weight that the jury ultimately

gives to his testimony not to the admissibility of such evidence.

### C. Dr. Spindler Identified The Body Of Law And Specific Authorities That Inform His Judgment On Good Governance Standards

As an initial matter, contrary to Tesoro's representation, in support of his opinions *Dr.

Spindler identified during his deposition two specific authorities* in support of his opinions that

consolidate the massive body of corporate governance law that Dr. Spindler referenced in his

Report and again in his deposition: a textbook he uses for his Business Associations course and

an academic paper on corporate finance with more than 12,000 citations.  (*Id.*, Ex. C [Spindler

Dep., Vol. 2], 156:24-158:17.)  Tesoro's claim that Dr. Spindler failed to specify any basis for

his opinions regarding good governance standards is simply wrong.

Moreover, Tesoro's suggestion that Dr Spindler should be able to identify a discrete list

of corporate governance rules or a single authority for what constitutes good corporate

governance in the petroleum refining and marketing industry is based on its own misconception

regarding the genesis of corporate governance rules and standards.  As described in the

preceding section, Tesoro's own expert confirmed that there are no specific rules of corporate

governance applicable to the petroleum refining and marketing industry, and all of the standard

corporate governance rules apply.  (Neumann Decl., Ex. E [Anderson Dep.], 82:23-83:13.)  As

Dr. Spindler explained in his deposition and Report, corporate governance rules and standards

are not based on a single authority but on an entire body of law, (*e.g.*, case law, federal securities

laws and regulations and academic literature) which Dr. Spindler identified, to the extent

relevant here, in his Report.  (Neumann Decl., Ex. A [Spindler Report], pp. 12-20, Ex. B

[Spindler Dep., Vol. 1], 75:1-76:5.)  Further, in describing what constitutes good governance

standards, Dr. Spindler also explained that, in addition to laws and regulations, corporate

governance also encompasses "the rules and policies, as well as I suppose the actions that a

corporation takes with regard to the delegation of authority within the firm."  (*Id.*, Ex. B

[Spindler Dep., Vol. 1], 74:17-22.)  This is strikingly similar to what Tesoro's own "expert in the

area of corporate governance," Robert Anderson, testified during his deposition:

> Q:      Okay.  And just so we're on the same page, what do you understand corporate
>         governance to mean?
> **A:      Corporate governance has to do with conduct of effective oversight over the
>         practices that are involved in risk management, so the governance over those
>         practices that are expected to be occurring, governance provides for assuring
>         that they're happening.**
> Q.      So would corporate governance in the credit risk context include credit policies?
> **A.      Yes, it would.**
> Q.      And would that also include the enforcement of credit policies?
> **A.      Yes, it would.**

(*Id.*, Ex. E [Anderson Dep.], 20:21-21:8.)  (*See also id.*, Ex. A [Spindler Report], pp. 11-12, 19-

21.)

Because there is not a single, discrete set of rules, Dr. Spindler's opinions rely upon an

entire body of law and academics—with which he is exceedingly well versed and which he

references in his report and deposition testimony—to inform his opinions as to what constitutes

good corporate governance.  Tesoro's request that Dr. Spindler identify a single authority to

support his opinions is fundamentally flawed and based on a misunderstanding of corporate

governance standards.  Notwithstanding, to the extent that Dr. Spindler was required to identify

specific authority, as discussed above, during his deposition he specifically cited two authorities

that summarize the massive body of law upon which he relies.  Tesoro's claim that Dr. Spindler failed to identify support for his opinions is groundless.

III.   **DR. SPINDLER'S OPINIONS ON THE ECONOMIC FACTORS THAT WOULD LEAD A COMPANY LIKE TESORO TO EXTEND CREDIT TO A COMPANY LIKE ENMEX ARE RELIABLE, RELEVANT, AND HELPFUL TO THE JURY**

Tesoro's attempt to prevent Dr. Spindler from testifying about the financial and economic factors impacting Tesoro's decision-making during the relevant time period is equally incorrect. Dr. Spindler's testimony on this subject matter is relevant to a key issue in this case: Tesoro's claimed reliance on certain purportedly fraudulent credit enhancement instruments (*i.e.*, letters of credit and security agreement, hereafter, "Four Documents") to extend credit to its customer Enmex.  (*See* Ex. 1 to NU MSJ [Dkt. 151] [Complaint] at ¶¶ 12-19.)  National Union intends to show at trial that there were other reasons why Tesoro extended credit to Enmex, separate and apart from the Four Documents, including economic factors that were contemporaneously identified by Tesoro's officers, described in Tesoro's SEC filings, and contained in other evidence.  Tesoro's CPA expert admits that various factors *other than* Tesoro's alleged reliance on the Four Documents caused Tesoro to conclude that the Enmex debt would ultimately be collectable (Ex. F [Holder Dep.] 136:5-23.).  Likewise, Tesoro's corporate governance expert admits that economic factors may have influenced Tesoro's decision to extend credit to Enmex.  (*Id.*, Ex. E [Anderson Dep.], 238:15-239:7, 240:8-241:3.)  Dr. Spindler's expert testimony will assist the jury in understanding this evidence.

Dr. Spindler's testimony regarding the economic factors existing when Tesoro decided to extend tens of millions of dollars in credit to Enmex will assist the jury in understanding Tesoro's financial situation as well as the market conditions, financial pressures, and principles of corporate finance that Tesoro faced during that tumultuous economic time period (i.e., 1987-

88, during the "Great Recession").  Dr. Spindler's testimony will also assist the jury in

understanding why those economic factors would lead a company in Tesoro's position to be

willing to extend more credit to a company like Enmex.  Expert opinion testimony is appropriate

when the factual issue is one that the trier of fact would not ordinarily be able to understand

without technical or specialized assistance.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 US 579,

591 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 US 137, 156 (1999).  Expert testimony that

provides a necessary context and framework, especially in cases involving complex or unfamiliar

concepts, is wholly appropriate and does not improperly interfering with the jury's assessment of

credibility.  *First Marblehead Corp. v. House*, 541 F.3d 36, 42 (1st Cir. 2008).

      Dr. Spindler does exactly what experts should do—take something complicated (*i.e.*,

economic theory, principles of corporate finance, and the economics of accounts receivable) and

explain it in a way the jury can understand.   In his Report, Dr. Spindler took the facts presented

in the record, analyzed Tesoro's officers' statements and the metrics of the Enmex account, and

applied economic theory and principles to interpret and explain these facts.[1]  (Neumann Decl.,

Ex. A [Spindler Report], pp. 45-50 [explaining statements made by Tesoro's officers and in SEC

filings and how a company in Tesoro's position during the time of economic uncertainty may

choose to relax its credit standards and look to a customer like Enmex for cash flow].)  More

---

[1] In contrast, Tesoro's proffered opinions from its corporate governance expert Robert Anderson do not offer expert interpretation of the facts of this matter, but, rather, are an attempt to import into this matter Mr. Anderson's experience at other companies.  For example, in his Report Mr. Anderson opines that Tesoro's senior executives "relied" on the Four Documents.  This opinion is not predicated on Mr. Anderson's interpretation of the evidence in this case, but, instead, is based upon Mr. Anderson's personal experience and his understanding of industry custom and practice.  More specifically, Mr. Anderson essentially opines that Tesoro's executives must have relied on the Four Documents because that's what he would have done.  Thus, unlike Dr. Spindler's opinions, Mr. Anderson's opinions are not based on his interpretation of evidence in this case; they are entirely speculative.  (*See, generally,* National Union's Opposed Motion to Exclude the Testimony of Robert Anderson.  [Dkt.  154]).

specifically, in his Report, Dr. Spindler explained how economic factors such as (1) excess production capacity and inventory; (2) declining overall demand for fuel; (3) Tesoro's need to generate cash; and (4) financial distress among Tesoro's customer base, particularly in California, would have impacted a company in Tesoro's position (*Id.*, Ex. A [Spindler Report], pp. 45-46).  Consistent with the facts presented in this case, as demonstrated by the citations in the Spindler Report, Dr. Spindler appropriately opines that a company in Tesoro's position would rely upon these factors and explains why a company would extend credit to a customer that is past due on its account.  *See First Marblehead Corp.*, 541 F.3d at 41-43 (economic consultant's testimony explaining how stock options function and how investor would think about exercising options was helpful to jury in understanding risk involved in employee's stock options decision).  These topics are well suited for expert opinion and explanation, and Dr. Spindler should be permitted to offer his opinions at trial.

## IV.    CONCLUSION AND REQUEST FOR RELIEF

For the reasons described above and in National Union's Motion to Strike Tesoro's Spindler Motion filed November 18, 2014 [Dkt. No. 158], this Court should either strike Tesoro's untimely Spindler Motion from the record, or deny it in its entirely.

(Remainder of page intentionally left blank; signatures on following page.)

Dated:  November 24, 2014

Respectfully submitted,

STEPTOE & JOHNSON LLP
Jon T. Neumann

OF COUNSEL:
**Beirne, Maynard & Parsons, LLP**
John G. George, Jr.
Texas Bar No. 24051944
Email: jgeorgejr@bmpllp.com
112 East Pecan, Suite 2750
San Antonio, TX 78205
Telephone: (210) 582-0220
Facsimile: (210-582-0231

By:  /s/ Jon T. Neumann
Kirsten H. Spira (SBN 119885)
Email: kspira@steptoe.com
Jon T. Neumann (SBN  277331)
Email: jneumann@steptoe.com
Matthew D. Taggart (SBN 227482)
Email: mtaggart@steptoe.com
**STEPTOE & JOHNSON LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone:     (310) 734-3200
Facsimile:     (310) 734-3300

**LOCAL COUNSEL FOR
DEFENDANT,
NATIONAL UNION FIRE
INSURANCE
COMPANY OF PITTSBURGH, Pa**

OF COUNSEL:
**Beirne, Maynard & Parsons, LLP**
Jeffrey R. Parsons
Texas Bar No. 15547200
Email: jparsons@bmpllp.com
Texas Bar No. 15547200
1300 Post Oak Boulevard, Suite 2400
Houston, Texas 77056-3000
Telephone (713) 623-0887
Facsimile (713) 960-1527
**Attorneys for Defendant
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, Pa.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of November, 2014, I electronically filed the foregoing Opposition to Plaintiff's Motion To Exclude Testimony of James C. Spindler with the Clerk of the Court using the CM/ECF filing system, which will send notification of filing by service of email on all counsel of record registered with CM/ECF:

/s/ Jon T. Neumann_____

Jon T. Neumann