UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TESORO REFINING AND MARKETING COMPANY LLC,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>Defendant. | Case No.  SA-CV-13-00931-DAE<br><br>Assigned to:   Hon. David A. Ezra<br><br>Date Filed:    May 6, 2013<br>Trial Date:    None Set<br><br>**ORAL ARGUMENT REQUESTED** |

**DECLARATION OF EMIL PETROSSIAN IN SUPPORT OF PLAINTIFF TESORO REFINING AND MARKETING COMPANY LLC'S OPPOSITION TO DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT ROBERT M. ANDERSON**

## DECLARATION OF EMIL PETROSSIAN

I, Emil Petrossian, hereby declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and admitted *pro hac vice* before this Court. I am an associate at the law firm of Manatt, Phelps & Phillips, LLP, counsel of record in this action for plaintiff Tesoro Refining & Marketing Company LLC ("Tesoro"). The following facts are within my personal knowledge, and if called upon as a witness, I would and could testify competently thereto.

2. Attached hereto as **Exhibit A** is a true and correct copy of an excerpt of the transcript of Calvin Leavell's December 9, 2013 deposition in this action.

3. Attached hereto as **Exhibit B** are true and correct copies of excerpts of the transcript of Scott Spendlove's March 21, 2014 deposition in this action.

4. Attached hereto as **Exhibit C** are true and correct copies of excerpts of the transcript of Phillip Anderson's March 20, 2014 deposition in this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 25, 2014 in Los Angeles, California.

_____
Emil Petrossian

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the United States District Court for the Western District of Texas, San Antonio Division, with notice of case activity to be generated and sent electronically by the Clerk of the Court to all counsel of record and mailed by electronic mail to all non-CM/ECF participants.

On this 25th day of November, 2014.

/s/ Lamont A. Jefferson
Lamont A. Jefferson

# EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT
 2               WESTERN DISTRICT OF TEXAS
 3
 4   TESORO REFINING & MARKETING  )
 5   COMPANY LLC,                 )
                                  )      ORIGINAL
 6          PLAINTIFF,            )
 7   VS.                          ) NO. 5:13-CV-00931-DAE
 8   NATIONAL UNION FIRE          ) VOLUME I
 9   INSURANCE COMPANY OF         )
10   PITTSBURGH, PA,              )
11          DEFENDANT.            )
12   _____
13
14
15       Videotaped Deposition of SHULA CALVIN
16       LEAVELL, taken at 112 East Pecan Street,
17       Suite 1200, San Antonio, Texas, commencing
18       at 9:20 a.m., Monday, December 9, 2013,
19       before Daniel J. Skur, CSR, Notary Public.
20
21
22   JOB No. 1773157
23   PAGES 1 - 269
24   PAGE 216 IS PRIVILEGED MATERIAL AND
25        BOUND UNDER SEPARATE COVER
```

Page 1

| | | |
|---|---|---|
| 1 | same time, so yes, I probably think it is. | 10:12:00 |
| 2 | Q. Okay. What is your best recollection as | 10:12:05 |
| 3 | to how you -- well, strike that. Let me back up. | 10:12:07 |
| 4 | So did you ask the principals at | 10:12:12 |
| 5 | EnMex to send you a letter of credit? | 10:12:18 |
| 6 | A. Yes. | 10:12:24 |
| 7 | Q. And who was it that you asked? | 10:12:24 |
| 8 | A. Jack Saryan, I think that's correct. | 10:12:27 |
| 9 | Q. I think that's S-A-R-Y-A-N. | 10:12:36 |
| 10 | A. And I probably also talked to -- their | 10:12:37 |
| 11 | finance person was a lady. | 10:12:43 |
| 12 | Q. Carla Burhanan? | 10:12:49 |
| 13 | A. Yes, I couldn't recall her name. | 10:12:51 |
| 14 | Probably one or both of those people. | 10:12:55 |
| 15 | Q. Okay. And why were you asking for a $12 | 10:12:56 |
| 16 | million letter of credit? | 10:13:03 |
| 17 | A. Because the account was so large. | 10:13:04 |
| 18 | Q. Okay. And was the purpose of the $12 | 10:13:06 |
| 19 | million letter of credit to bring some assurances, | 10:13:10 |
| 20 | some security to Tesoro to allow it to continue to | 10:13:12 |
| 21 | extend credit to EnMex? | 10:13:17 |
| 22 | A. Yes, that's generally what letter of | 10:13:18 |
| 23 | credits were for. | 10:13:21 |
| 24 | Q. And how did you receive this letter of | 10:13:30 |
| 25 | credit? | 10:13:31 |

Page 47

```
 1              REPORTER'S CERTIFICATION
 2         DEPOSITION OF SHULA CALVIN LEAVELL
 3                      TAKEN ON
 4                 December 9th, 2013
 5
            I, the undersigned, a Notary Public and
 6   Certified Shorthand Reporter of the State of Texas,
     do hereby certify:
 7
 8          That the foregoing proceedings were taken
     before me at the time and place herein set forth;
 9   that any witnesses in the foregoing proceedings,
     prior to testifying, were placed under oath; that a
10   verbatim record of the proceedings was made by me
     using machine shorthand which was thereafter
11   transcribed under my direction; further, that the
     foregoing is an accurate transcription thereof;
12   further, that I and my firm have been relieved of
     any custodial duties by agreement of the parties
13   hereto by and through their attorneys as stated
14   herein.
            I further certify that I am neither
15   financially interested in the action nor a relative
16   or employee of any attorney of any of the parties.
17
18   Certified to by me this 23rd day of December, 2013.
19
20
21
22          _____
23          Daniel J. Skur
24          Notary Public, State of Texas
25          My Commission Expires 7/10/2014
```

Page 269

# EXHIBIT B



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| TESORO REFINING AND MARKETING COMPANY, LLC, | ) Case No.: <br> ) SA-13-CV-00931-DAE <br> ) |
| Plaintiff, | ) [Assigned to the <br> ) Hon. David A. Ezra] |
| VS. | ) <br> ) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA | ) <br> ) <br> ) <br> ) |
| Defendant. | ) |

*****************************************************
ORAL AND VIDEOTAPED DEPOSITION
OF
SCOTT SPENDLOVE

March 21, 2014
*****************************************************

DEPOSITION upon oral examination of the witness, SCOTT SPENDLOVE, taken on behalf of the Defendant, pending in the United States District Court for the Western District of Texas before LISA LUJAN WEAR, a Certified Shorthand Reporter in and for the State of Texas, on the 21st day of March, 2014, taken at Beirne, Maynard & Parsons, L.L.P., 112 East Pecan Street, Suite 2750, San Antonio, Texas, 78205 beginning at 9:40 a.m., in accordance with the Federal Rules of Civil Procedure and any Stipulations hereinafter set forth.

It is further agreed that Rule 30(b)(5) is waived by agreement of the parties.

```
 1   commitment to reduce their balance?
 2        A.   That there -- that a separate schedule had been
 3   prepared in which EnMex was committing to make payments
 4   to reduce the balance by an amount that I don't recall
 5   at this point, but significantly by the end of December.
 6        Q.   Did you ask to see that schedule?
 7        A.   I did.
 8        Q.   And did -- was it provided to you?
 9        A.   It was, uh-huh.
10        Q.   You also said you began to look again at -- and
11   I'm paraphrasing -- certain collateral instruments.  Was
12   that in discussions, or are you talking about actually
13   viewing the instruments?
14        A.   I recall a meeting specifically in which Cal
15   and Mark Wilson and Claude Moreau and I sat in a
16   conference room and actually white-boarded what we
17   understood about the EnMex balance, how it had grown,
18   how -- that we expected it to decline and in that
19   conversation discussed the available collateral and
20   securities but did not specifically look at those
21   documents at that time.
22        Q.   And in that discussion with respect to
23   available collateral and security, do you recall what
24   was said?
25        A.   Well, the first thing that was mentioned was
```

1   the letter of credit.  Letter of credits are the first
2   lines of defense.  They're the most liquid and secure
3   instruments, and it's the first thing that I looked to.
4              And then beyond that, the other pledges of
5   collateral, which, frankly, I always consider to be much
6   less secure, were also discussed.
7       Q.   In terms of what the other pledges of
8   collateral were, what were you told in that meeting?
9       A.   I recall that there was a pledge of receivables
10  and a pledge of personal assets.
11      Q.   Anything else?
12      A.   I don't recall specifically.  Those are the --
13  the letter of credit, pledge of receivables and the
14  pledge of personal assets were the three things I recall
15  specifically talking about.
16      Q.   At that time during that meeting where you
17  white-boarded certain aspects of the EnMex account, did
18  you have an understanding as to the amount of the letter
19  of credit?
20      A.   I did.
21      Q.   Was that the first time you understood the
22  amount or had that come to your attention before?
23      A.   It had come to my attention before.
24      Q.   And when was the first time you remembered
25  knowing that it was a $24 million letter of credit?

# EXHIBIT C

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

TESORO REFINING AND             ) Case No.:
MARKETING COMPANY, LLC,         ) SA-13-CV-00931-DAE
                                )
          Plaintiff,            ) [Assigned to the
                                ) Hon. David A. Ezra]
VS.                             )
                                )
NATIONAL UNION FIRE             )
INSURANCE COMPANY OF            )
PITTSBURGH, PA                  )
                                )
          Defendant.            )

***************************************************
ORAL AND VIDEOTAPED DEPOSITION
OF
PHILLIP ANDERSON

March 20, 2014
***************************************************

DEPOSITION upon oral examination of the witness, PHILLIP ANDERSON, taken on behalf of the Defendant, pending in the United States District Court for the Western District of Texas before LISA LUJAN WEAR, a Certified Shorthand Reporter in and for the State of Texas, on the 20th day of March, 2014, taken at Beirne, Maynard & Parsons, L.L.P., 112 East Pecan Street, Suite 2750, San Antonio, Texas, 78205 beginning at 9:27 a.m., in accordance with the Federal Rules of Civil Procedure and any Stipulations hereinafter set forth.

It is further agreed that Rule 30(b)(5) is waived by agreement of the parties.

```
 1   by asking you whether you had any conversations with
 2   these people in the marketing department while you were
 3   treasurer.  Did you have any conversations with anyone
 4   in the marketing department after you were treasurer
 5   about EnMex?
 6        A.   Not that I recall.
 7        Q.   All right.  I'm going to show you the complaint
 8   in this case, because it has neatly tabbed in it many of
 9   the documents at issue.  I guess I might as well just
10   make it an exhibit.  We're at 115.
11             (Exhibit 115 was marked.)
12        Q.   (BY MS. SPIRA)  I'm going to be asking you
13   about the exhibits to what we've marked as 115.  And so
14   if you could flip to Exhibit A.  That's the first
15   document I want to ask you about.
16             Other than what your counsel may or may not
17   have shown you, have you ever seen the document that's
18   marked as Exhibit A to the complaint in this matter,
19   which purports to be a $12 million letter of credit?
20        A.   I --
21             MR. DE RECAT:  Take your time and look at
22   it if you want to.
23        A.   I can't verify that this is the LC that Cal
24   showed me.
25        Q.   (BY MS. SPIRA)  And when you say you can't --
```

```
 1   that Cal showed you an LC, are you referring to a
 2   meeting you had with Mr. Leavell where he was flipping
 3   through what you understood to be the credit file?
 4        A.   Yes.
 5        Q.   And while he was flipping through what you
 6   understood to be the credit file, he held up some
 7   documents to you?
 8        A.   Yes.
 9        Q.   And one of the documents he held up you
10   understood to be a copy of a letter of credit?
11        A.   I don't -- it was an LC.  Whether it was a copy
12   or an original, I don't know.
13        Q.   Well, did it have -- was it in color?  I mean
14   did it have like the original --
15        A.   I don't recall it being in color.
16        Q.   I mean because the Bank of America logo on it,
17   if it was original, would have colors, right?
18        A.   Sure.  I don't know.
19        Q.   So he held up a document which appeared to you
20   to be a letter of credit; is that correct?  Or let me --
21   let me withdraw that.
22             He held up a document and he said something
23   to the effect of, "This is a letter of credit"?
24        A.   Yes.
25        Q.   And at the time that he held it up, did you
```

```
 1   observe it closely enough to determine whether or not it
 2   appeared to be a letter of credit?
 3        A.   I didn't inspect the document.
 4        Q.   I understand you didn't inspect it.  But, for
 5   example, what I'm asking you is, if I put something up
 6   really quickly and put it down, I -- you may or may not
 7   have observed whether or not the form appeared to be a
 8   letter of credit, or it may have just been a paper that
 9   was flashed and it could have been a laundry list.
10             Could you observe it well enough to tell
11   whether or not it appeared to be a letter of credit?
12        A.   I didn't see anything that would cause me to
13   think that it wasn't a letter of credit.
14        Q.   Do you remember seeing whether it had the Bank
15   of America logo on it?
16        A.   It had a -- it had a Bank of America logo.  I
17   do recall a logo.
18        Q.   And when you say -- what else do you remember?
19   Do you remember looking at what the amount was on the
20   letter of credit?
21        A.   No, I didn't -- did not read any of the text of
22   the document.
23        Q.   Did you ask to look at it?
24        A.   No.
25        Q.   Now, this meeting -- we talked -- we talked
```

```
 1   were performing, on what basis do you state they were
 2   performing?
 3       A.  They were making regular payments.  Prices
 4   during this time were going up substantially.
 5       Q.  Uh-huh.
 6       A.  On a volumetric basis, they were lifting, they
 7   were paying is what Cal represented.  Receivables in
 8   general during this time went up quite a lot.
 9       Q.  Well, this was a particularly large receivable,
10   was it not?
11       A.  The company had a lot of receivables.  It was
12   large for this size entity.
13       Q.  I understand that there was concern about
14   endangering the collectability of the account if you
15   tried to draw upon the letter of credit.  But were you
16   concerned that, by not drawing on the letter of credit,
17   that Tesoro took the risk that it may not be able to
18   collect at a later time?
19       A.  Sorry, could you -- I've got to go back and
20   listen to that one from the beginning.
21             MS. SPIRA:  Can you reread that question?
22             THE REPORTER:  Question, "I understand that
23   there was concern about endangering the collectability
24   of the account if you tried to draw upon the letter of
25   credit.  But were you concerned that, by not drawing on
```

1    the letter of credit, that Tesoro took the risk that it
2    may not be able to collect at a later time?"
3         A.   Cal was making those recommendations, and we
4    believed that the -- based on what he was telling us,
5    that that was the correct recommendation.
6         Q.   (BY MS. SPIRA)  And what was it that he was
7    telling you that made you think that was the correct
8    recommendation?
9         A.   That we had the LC, that it was secured for
10   $24 million, we had -- or he was working on additional
11   credit enhancement for the account to protect the
12   company.
13        Q.   During the time that you were treasurer, do you
14   know if the EnMex account was ever discussed at the
15   board of directors level?
16        A.   I don't know.
17        Q.   By the time that you changed positions and
18   ceased being treasurer at Tesoro, was there a concern at
19   Tesoro management about losing money by continuing to
20   sell to EnMex?
21        A.   I'm sorry, state that one again.
22        Q.   By the time -- at -- at any time at or before
23   the time that you ceased being Tesoro --
24        A.   At or before.  I'm just trying to get the time
25   period right here.

```
 1        Certified to by me this the  11   day of
          April         , 2014.
 2
 3                          [signature: Lisa Lujan Wear]
 4                          _____
                            LISA LUJAN WEAR, CSR, RPR
                            CSR No. 4543 - Expires 12/31/15
 5                          RPR No. 806106 - Expires 9/30/14
 6                          Koole Court Reporters of Texas
                            Firm #413
 7                          8000 IH-10 West, Suite 600
                            San Antonio, Texas 78230
 8                          (210) 558-9484
                            (210) 558-3129  Fax
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

*AUTHENTIC COPY. The original certified E-Transcript file was electronically signed using RealLegal technology.*