# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| TESORO REFINING AND MARKETING COMPANY LLC,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>    Defendant. | Case No.  SA-CV-13-00931-DAE<br><br>Assigned to:    Hon. David A. Ezra<br><br>Date Filed:     May 6, 2013<br>Trial Date:     None Set<br><br>**[ORAL ARGUMENT REQUESTED]** |

**PLAINTIFF TESORO REFINING AND MARKETING COMPANY LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN PORTIONS OF THE TESTIMONY OF DEFENSE EXPERT JAMES C. SPINDLER**

**I.    TESORO'S MOTION TO EXCLUDE TESTIMONY BY MR. SPINDLER ON STANDARDS FOR "GOOD CORPORATE GOVERNANCE" SHOULD BE GRANTED, BECAUSE HIS CITATION TO A CORPORATIONS CASEBOOK — RELIED UPON TO TEACH HIS LAW SCHOOL CLASSES — IS EXACTLY THE TYPE OF ACADEMIC ERROR TESORO OBJECTS TO.**

Tesoro objects to James Spindler's ability to testify on whether Tesoro's conduct was consistent with "*good corporate governance*." As made clear in the moving papers, "three years as an associate attorney at Cravath, Swain & Moore, followed by a series of university teaching assignments, may qualify him to be a law school or business school instructor in the areas of securities law; but they have not afforded Mr. Spindler any experience in the corporate boardrooms — or credit departments — of publicly-managed companies." (Pl.'s Mot. at 1.)

Tesoro's motion made clear that when asked to define "good corporate governance" and identify recognizable *standards* by which "good corporate governance" could be judged, Mr. Spindler was unable to do so. (*Id.* at 3-4.) As a result, allowing Mr. Spindler to testify on whether Tesoro followed "good corporate governance" standards would be improper under Fed. R. Evid. 702, because it would be nothing more than *ipse dixit*. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Burleson v. Tex. Dep't of Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (same). Indeed, "[t]o establish reliability under *Daubert*, an expert bears the burden of furnishing some objective, independent validation of [his] methodology . . . . The expert's assurances that he has utilized generally accepted [principles] is insufficient." *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (citations, internal quotation marks and footnotes omitted) (bracketed alterations in original). The Fifth Circuit "ha[s] long held that [w]ithout

more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Id*. at 537 (internal quotation marks omitted).

In its *Opposition*, National Union argues that Mr. Spindler *did* offer a standard for anchoring and judging his testimony on what constitutes "good corporate governance" standards. But National Union fails to mention that this offer occurred on the *second* day of the deposition, after Mr. Spindler had an opportunity to consider the deficiency of his answer on the first day. National Union cites Mr. Spindler's testimony at pages 156-158 for these supposed standards (which will be addressed momentarily). But the second day began with the following exchange, after which Mr. Spindler offered his view on whether there was any standard by which "good corporate governance" could be judged:

> Q. Good morning, Professor.
>
> A. Good morning.
>
> Q. My first question is: Did you do any additional work, research, analysis, since we left each other's company in day one of your deposition?
>
> A. Yes, I looked up a few things.
>
> Q. Okay. Could you share with us everything you did do.
>
> A. Sure.

(Spindler Depo. Tr. at 155:24-156:3.)

Immediately after this exchange, Mr. Spindler began trying to repair the first day's damage. But when Mr. Spindler attempted to do so, he did so quite poorly — even with the benefit of a night to consider his first day's testimony. He said that he would look for guidance on what constitutes "good corporate governance" standards in a *caselaw* book he relies upon to teach his law school students, *Commentaries and Cases on the Law of Business Organization*

2

(4th ed. 2012). His response — which did not identify any particular chapters or subject matter from the casebook — is exactly the type of evasive conduct, based on subjective perspective, that Tesoro objects to. As a purported expert on "good corporate governance" standards, Mr. Spindler should be able to direct an audience to industry-wide standards on what constitutes "good corporate governance." Instead, he purports to base his view on a Corporations caselaw book with the following contents:

| | |
|---|---|
| Ch. 1. | Acting Through Others: The Law of Agency |
| Ch. 2. | The Problem of Joint Ownership: The Law of Partnership |
| Ch. 3. | The Corporate Form |
| Ch. 4. | The Protection of Creditors |
| Ch. 5. | Normal Governance: The Voting System |
| Ch. 6. | Normal Governance: The Duty of Care |
| Ch. 7. | Conflict Transactions: The Duty of Loyalty |
| Ch. 8. | Executive Compensation |
| Ch. 9. | Shareholder Lawsuits |
| Ch. 10. | Transactions in Control |
| Ch. 11. | Fundamental Transactions: Mergers and Acquisitions |
| Ch. 12. | Public Contests for Corporate Control |
| Ch. 13. | Trading in the Corporation's Securities. |

(http://www.aspenlawschool.com/books/allen_busorg4/toc.asp)

Even a cursory review of the table of contents for that textbook makes clear that Mr. Spindler cannot identify any particular standards of "good corporate governance" that are implicated by his proposed testimony. Nor does his reliance on a second source, a 1997 article

in the *Journal of Corporate Finance*, "Survey of Corporate Governance," cure the problem, because that article is a survey of different approaches to corporate governance around the world, including the United States, Japan, Europe, and Russia.

Mr. Spindler's total failure to specify the basis for "good governance standards" renders those portions of his testimony concerning that topic inadmissible under Fed. R. Evid. 702.

II. **MR. SPINDLER'S ATTEMPT TO OFFER EXPERT OPINION ON TESORO'S "GAMBLE" FOR SELLING FUEL TO ENMEX — BASED ON THE RECESSION — IS AN UNJUSTIFIABLE EXTRAPOLATION.**

Mr. Spindler presents five factors — *other* than the forged letters of credit and forged personal guarantee — that he believes caused Tesoro to sell fuel to Enmex on credit. Tesoro does *not* object to Mr. Spindler's testimony on the first four factors. But Tesoro does contend that "whether the 2008 recession caused Tesoro to gamble with Enmex by extending credit" is "an unjustifiable extrapolation from the record and does not assist a lay finder of fact." (Pl.'s Mot. at 6 (*citing Burleson*, 393 F.3d at 587 ("A court may rightfully exclude expert testimony where a court finds that an expert has extrapolated data, and there is 'too great an analytical gap between the data and the opinion proffered.'" (quoting *Joiner*, 522 U.S. at 146))).)

Specifically, Tesoro's motion, which quotes *verbatim* from Mr. Spindler's report, argues that Mr. Spindler "speculates that oversupply and weak demand during the 2008 recession *might* have caused Tesoro to knowingly engage in risky sales to Enmex." (Pl.'s Mot. at 6-7 (citing Petrossian Decl., Ex. A [Spindler's Expert Report] at 49-50).) And Tesoro's motion goes on to note that during his deposition, Mr. Spindler admitted to not having seen any evidence that Tesoro knowingly engaged in risky fuel sales, on credit, to Enmex. (*Id.* at 7-8 (citing Petrossian Decl., Ex. C at 272:8-19).) The basis of Mr. Spindler's opinions on this subject is drawn solely from transcripts of five (5) publically available transcripts of Quarterly Earnings Call reports in

which he relies on highly generalized financial and markets statements from Tesoro's CEO and his general understanding of the economic conditions impacting the entire country in 2007–2008. None of the opinions is such that a trier of fact would need an expert "to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a).  Nor are any of the opinions based on "sufficient facts or data" or "the product of reliable principles and methods." *Id.* R. 702(b)-(c).

Accordingly, it would be wholly improper to allow Mr. Spindler to extrapolate that, based on recession conditions, Tesoro knowingly engaged in risky lending practices.  *Burleson*, 393 F.3d at 587.  Despite being nine pages long, National Union's *Opposition* wholly fails to address Tesoro's argument that Mr. Spindler's testimony regarding the economic recession is speculative and an unjustified extrapolation.  Instead, National Union argues that Tesoro's own experts (Holder and Anderson) conceded that factors *other* than the letters of credit and personal guarantee may have caused Tesoro to extend credit to Enmex.  (Def.'s Opp'n at 7.)  But this argument is irrelevant and imprecise.[1]  Tesoro is *not* objecting to all testimony on causes *other* than the forged documents.  Indeed, Tesoro does not challenge the first four reasons offered by Mr. Spindler as to why Tesoro extended credit.  It is *only* Mr. Spindler's wholly unsupported opinion about the conditions of the recession — and whether those caused Tesoro to knowingly make risky credit sales to Enmex — to which Tesoro objects.

Because Spindler's testimony on this record is, by his own admission, speculative and cannot possibly constitute a justifiable extrapolation from the record, it should not be permitted.

---

[1] The imprecision of National Union's argument is vividly illustrated by its *Opposition*. National Union argues that "Tesoro's corporate governance expert admits that economic factors may have influenced Tesoro's decision to extend credit to Enmex." (Def.'s Opp'n at 7 (citing Anderson Depo. Tr. at 238:15-239:7; 240:8-241:3.)  But as the Court can tell from reviewing the deposition transcript, Mr. Anderson does not identify any "economic factors" (such as the recession). Instead, he merely concedes that factors in addition to the four forged documents also may have influenced Tesoro's decision-making.

Dated:   December 1, 2014                MANATT, PHELPS & PHILLIPS, LLP


                                         By:       /s/  Robert Begland
                                                   Robert Begland

                                         MANATT, PHELPS & PHILLIPS, LLP
                                         Craig J. de Recat (Admitted *Pro Hac Vice*)
                                          E-mail:  cderecat@manatt.com
                                         Robert R. Begland (Admitted *Pro Hac Vice*)
                                          E-mail:  rbegland@manatt.com
                                         Emil Petrossian (Admitted *Pro Hac Vice*)
                                          E-mail:  epetrossian@manatt.com
                                         11355 West Olympic Boulevard
                                         Los Angeles, California 90064
                                         Telephone:  (310) 312-4000
                                         Facsimile:  (310) 312-4224

                                         HAYNES AND BOONE, LLP
                                         Lamont A. Jefferson
                                          E-mail:  lamont.jefferson@haynesboone.com
                                         112 East Pecan Street, Suite 1200
                                         San Antonio, Texas 78205
                                         Telephone:  (210) 978-7413
                                         Facsimile:  (210) 554-0413

                                         *Attorneys for Plaintiff*
                                         TESORO REFINING & MARKETING CO. LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the United States District Court for the Western District of Texas, San Antonio Division, with notice of case activity to be generated and sent electronically by the Clerk of the Court to all counsel of record and mailed by electronic mail to all non-CM/ECF participants.

On this 1st day of December, 2014.

                                                  /s/ Lamont A. Jefferson
                                               Lamont A. Jefferson

313540129.1