

1  MANATT, PHELPS & PHILLIPS, LLP
   CRAIG J. DE RECAT (Bar No. CA 105567)
2  JOHN F. LIBBY (Bar No. CA 128207)
   ROBERT R. BEGLAND (Bar No. CA 210930)
3  11355 West Olympic Boulevard
   Los Angeles, CA 90064-1614
4  Telephone: (310) 312-4000
   Facsimile: (310) 312-4224
5
6  Attorneys for Plaintiff and Cross-Defendant

**REC'D**

**SEP 0 2 2010**

**FILING WINDOW**

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA
8                     FOR THE COUNTY OF LOS ANGELES

9
10 TESORO REFINING AND MARKETING         | Case No. BC405371
   COMPANY, a Delaware corporation,
11                                        | Assigned to the Hon. Daniel J. Buckley
              Plaintiff and Cross-
12            Defendants,                 | **PLAINTIFF'S APPENDIX OF EVIDENCE
                                          | IN SUPPORT OF ITS MOTIONS FOR
13       vs.                              | SUMMARY JUDGMENT AND SUMMARY
                                          | ADJUDICATION [UNREDACTED]**
14 ENMEX, CORP., a California corporation,
   now known as TEU PRODUCT               | Filed Concurrently Herewith:
15 COMPANY, JACK SARYAN, aka JACK
   A. KHACHATRYAN, aka AKOP               | (1) Plaintiff's Motion for Summary
16 KHACHATRYAN, aka JACK                  |     Adjudication of Issues on Its Second
   KHACHATRIAN, SHOGIK BLUDYAN,           |     Amended Complaint;
17 CARLA BURHANAN, and DOES 1
   through 50, inclusive,                 | (2) Plaintiff's Separate Statement of Undisputed
18                                        |     Material Fact in Support of Its Motion for
              Defendant and Cross-        |     Summary Adjudication of Issues on Its
19            Complainant.                |     Second Amended Complaint;

20                                        | (3) Cross-Defendant's Motion for Summary
                                          |     Judgment of the Cross-Complaint;
21
                                          | (4) Cross-Defendant's Separate Statement of
22                                        |     Undisputed Material Fact in Support of Its
                                          |     Motion for Summary Judgment of the
23       **CONDITIONALLY UNDER SEAL**     |     Cross-Complaint

24 Confidential Information – Subject to   | Date:  November 16, 2010
   Protective Order. This item shall not be| Time:  9:00 a.m.
25 opened except as ordered by the Court in| Dept:  35
   this action or upon written stipulation
26 executed by all of the parties and filed in | Complaint Filed: January 13, 2009
   court in this action.                  | Trial Date:     January 20, 2011

27
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

TESORO'S APPENDIX OF EVIDENCE – [UNREDACTED]

EXHIBIT C

TSOINSNU 30056

| | | |
|---|---|---|
| 1 | 03567-15177 for the period October 1 through October 31, 2008 (BOA 00073 - BOA 00098). | |
| 2 | | |
| 3 | Bank of America account statements for Enmex Corp. Account No. 03567-15177 for the period November 1 through November 28, 2008 (BOA 00099 - BOA 00121). | T-2 |
| 4 | | |
| 5 | Bank of America account statements for Enmex Corp. Account No. 03567-15177 for the period November 29 through December 31, 2008 (BOA 00122 - BOA 00145). | T-3 |
| 6 | | |
| 7 | Declaration of Craig de Recat | U |
| | January 30, 2009 e-mail from Craig de Recat to Marc Marmaro | U-1 |
| 8 | Declaration of Carl Grumer | V |
| 9 | January 13, 2009 letter from Carl Grumer to Trans Energy | V-1 |
| 10 | Declaration of Calvin Leavell | W |
| 11 | Declaration of Brian Randecker | X |
| 12 | Tesoro Invoices to Enmex Corp., dated September 2, 2008 (TS062580-62582; TS058143-58240) | X-1 |
| 13 | Tesoro Invoices to Enmex Corp., dated September 3, 2008 (TS058241-58282) | X-2 |
| 14 | | |
| 15 | Tesoro Invoices to Enmex Corp., dated September 4, 2008 (TS058283-58329) | X-3 |
| 16 | Tesoro Credit Procedure: Credit Approval, collection and control (issue date November 13, 2003) (TS 056653-58) | X-4 |
| 17 | Dun & Bradstreet Business Information Report on Petrolux Oil Corporation/Jetlux Petroleum (printed September 10, 2004) (TS 018070-76; TS 0001948-76) | X-5 |
| 18 | | |
| 19 | Dun & Bradstreet Business Information Report on Petrolux Oil Corporation/Jetlux Petroleum (printed January 24, 2006) (TS 0001957-1962) | X-6 |
| 20 | | |
| 21 | Dun & Bradstreet Business Information Report on Petrolux Oil Corporation/Jetlux Petroleum (printed September 13, 2006) (TS 001943-47) | X-7 |
| 22 | | |
| 23 | Dun & Bradstreet Comprehensive Report on Petro Energy Corp. (printed August 23, 2007) (TS 001920-32) | X-8 |
| 24 | | |
| 25 | Dun & Bradstreet Business Information Report on Enmex Corporation/Trans Energy USA (printed July 22, 2008) (TS 001878-1885) | X-9 |
| 26 | | |
| 27 | Declaration of Lynne Westfall | Y |
| 28 | January 14, 2009 press release submitted to the Securities and Exchange | Y-1 |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

7

TESORO'S APPENDIX OF EVIDENCE

EXHIBIT C

TSOINSNU 30062

# EXHIBIT W

EXHIBIT C　　　TSOINSNU 31029

## DECLARATION OF SHULA CALVIN LEAVELL

I, Shula Calvin Leavell, hereby declare as follows:

1. I am the former Director of Credit for Tesoro Refining and Marketing Company ("Tesoro"). I have personal knowledge of the facts set forth below, and if called upon to testify, I could and would competently do so as follows:

2. I worked in the Credit Department at Tesoro from 1979 through my retirement on September 30, 2008. I served as Director of Credit from 2002 through my retirement. After I retired, I served as a consultant to Tesoro in order to assist in the transition to my successor. My duties as a consultant progressively decreased by the end of 2008 and I ceased being a consultant in mid-February 2009.

3. My duties as Director of Credit included reviewing applications for trade credit from potential customers; setting credit limits for customers; monitoring receivables and payments; ensuring that customers are communicating with Tesoro's Credit Department about their financial situation and ability to make payments; and obtaining updated financial statements from customers as part of this ongoing monitoring process.

4. On occasion Tesoro's customers get behind in their payments and allow their receivables to grow. Part of my job duties as Director of Credit was to work with these customers to restructure their debt and payments in order to ensure that Tesoro would receive payment. Typically, on these occasions we would obtain security, often in the form of a pledge of the customer's trade receivables. On rare occasions Tesoro would be required to sue a customer to collect amounts due, or would appear in bankruptcy court as a secured or unsecured creditor.

5. I personally supervised the EnMex account from the summer of 2005 onward, because Enmex began falling behind in its payment obligations to Tesoro. Although Tesoro did not have a written gasoline or diesel sales agreement with Enmex during most of that time (as was the case with many customers), the parties understood that Enmex was purchasing on Net 30 terms, that is, that EnMex would have to pay all invoices within thirty days of the date of the invoice. However, Enmex began to fall far behind, such that it was not paying its invoice within 90-120 days.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

**W-875**

EXHIBIT C

TSOINSNU 31030

6. During the summer of 2008, I entered into negotiations with Jack Saryan, the principal of EnMex. These negotiations resulted in the Modification and Security Agreement (and related documents, collectively, the "MSA") dated as of September 30, 2008. As of that date EnMex owed Tesoro nearly $90 million for fuel sales.

7. During the negotiations, Mr. Saryan and I discussed and agreed to the following:

   a. One purpose of the MSA was to reduce both the size and the age of the receivable. The size and age of the receivable owed by EnMex to Tesoro would be reduced both by (i) regular payments in the normal course of business and (ii) periodic large progress payments.

      i. The regular payments in the ordinary course of business were to be ensured by a Rack Sales Agreement ("RSA") that was entered into as part of the MSA. The payment terms for ongoing purchases of product by EnMex would continue to be Net 30 from date of invoice, the same terms as sales prior to the MSA. The Net 30 term was intended to confirm the existing agreement between the parties and would apply to all ongoing and future sales.

      ii. The periodic large progress payments were to be determined as of certain "threshold dates" and were designed to reduce the size of the receivable over time. Jack Saryan and I discussed that depending on its financial situation and business conditions, EnMex would have the option with regard to each progress payment to roll over up to 20% of the scheduled payment to the following payment date. Mr. Saryan requested this "wiggle room" in view of the extreme price volatility in the market at the time. But at no time did we discuss the idea that EnMex could roll-over more than 20% of the entire amount due on a particular threshold date to the next threshold date, as that would have defeated one of the principal purposes of the agreement, namely to reduce the size and age of the receivable over time.

3

DECLARATION OF SHULA CALVIN LEAVELL

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1  The age of the receivable would be reduced by a provision applying both types of
2  payments to the oldest outstanding receivable.
3     b. A second purpose of the MSA was to provide Tesoro with collateral in the form of
4       EnMex's accounts receivables. During the negotiation of the MSA, EnMex's
5       representatives supplied me with a list of Enmex's accounts receivable dated
6       September 22, 2009. I relied on the representations contained in the document for
7       the purpose of deciding to enter into the MSA. When I reviewed the document, I
8       noticed that the vast majority of EnMex's receivables were owed to it by Avolar, a
9       low cost airline in Mexico. Prior to entering into the MSA, Mr. Saryan assured me
10      that he and his management team were closely monitoring Avolar's business, that
11      they expected the account receivable was fully collectible, and would make sure
12      that Avolar would timely pay EnMex.
13   8. I believe that the MSA we entered into fully and accurately reflects all of these
14 agreements reached between Mr. Saryan and myself during our negotiations.
15   9. After we entered into the MSA, and during October, November and the first half
16 of December 2008, I noted that EnMex's receivable was growing, not shrinking. Once again,
17 during our negotiations Mr. Saryan and I had agreed that one of the purposes of the MSA was to
18 reduce the amount of the receivable. I spoke to Mr. Saryan once or twice a week after the MSA
19 was entered into, reminded him of the purpose of the agreement to reduce the size of the
20 receivable, and urged him to increase the amount of his payments in the ordinary course of
21 business so as to begin the process of reducing the amount of the receivable in the course of the
22 agreement. Mr. Saryan agreed that he would try to do so, and never disputed that the payment
23 terms for ongoing business were Net 30 from the date of invoice.
24   10. During December 2008 I spoke and emailed with Mr. Saryan, and with EnMex's
25 CFO, Carla Burhanan, on several occasions. I urged them to make every effort to make the initial
26 progress payment due on December 31, 2008, which as I recall would have been approximately
27 $13 million. Neither Mr. Saryan nor Ms. Burhanan denied that a payment in that approximate
28 amount was due at that time.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

DECLARATION OF SHULA CALVIN LEAVELL

**W-877**

EXHIBIT C

TSOINSNU 31032

11. In addition, by late 2008 Mr. Saryan had informed me that Avolar was flying on a greatly reduced schedule due to the economic and financial crisis then taking place. Neither Mr. Saryan nor anyone else from EnMex ever told me that the government of Mexico had shut down Avolar, nor did anyone from EnMex ever express any concern about Avolar's ability to ultimately repay EnMex.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 7th day of January, 2010 in San Antonio, Texas.

*/s/ Shula Calvin Leavell*
Shula Calvin Leavell

300036015.1
1/7/10 10:54 AM

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

5
DECLARATION OF SHULA CALVIN LEAVELL

W-878

EXHIBIT C

TSOINSNU 31033